FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 09 2018 ★

BROOKLYN OFFICE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CRYSTAL WILLIAMSON, individually and on behalf of all others similarly situated, | Civil Case No.: CV 18-5615 |
| Plaintiff, | DONNELLY, J. |
| | GOLD, M.J. |
| v. | JURY TRIAL DEMANDED |
| BROOKLYN HOP 2 LLC, DINEEQUITY, INC., INTERNATIONAL HOUSE OF PANCAKES, LLC, IHOP FRANCHISOR LLC, IHOP RESTAURANTS LLC, and DOES 1-10, inclusive, | |
| Defendants. | |

## ANTITRUST CLASS ACTION COMPLAINT

Plaintiff CRYSTAL WILLIAMSON ("Plaintiff"), individually and on behalf of all those similarly situated, by and through her counsel, brings this Class Action Complaint ("Complaint") against Defendants BROOKLYN HOP 2 LLC, DINEEQUITY, INC., INTERNATIONAL HOUSE OF PANCAKES, LLC, IHOP FRANCHISOR LLC, AND IHOP RESTAURANTS LLC ("IHOP"); and Does 1 through 10 (who collectively shall be referred to hereinafter as "Defendants"), on personal knowledge with respect to herself and her own acts, and on information and belief as to other matters, alleges as follows:

# I. <u>NATURE OF ACTION</u>

1.      Plaintiff, on behalf of herself, on behalf of the New York general

public, and as a class action on behalf of Defendants' employees from January 1,

2014 through August 20, 2018 ("Class Members"), seeks millions of dollars in lost

wages, plus triple damages, and interest, caused by Defendants' long-standing and

illegal mutual non-solicitation agreements (i.e., agreements that IHOP franchisees

could not solicit for employment employees of IHOP and/or of other IHOP

franchisees) and no-hire agreements (i.e., agreements that IHOP franchisees could

not hire employees of IHOP and/or other IHOP franchisees) that were all entered

into by IHOP franchises throughout New York State for decades and that had the

intended and actual effect of significantly reducing Class Members' wages and

salaries.  The genesis of the no-hire and non-solicitation agreements at issue were

franchise agreements between IHOP and its franchisees, and between its

franchisees, including, upon information and belief, Brooklyn 2 Hop LLC.

2.      In sum, Defendants engaged in *per se* violations of New York

Antitrust laws and the Sherman Antitrust Act by entering into no-hire and non-

solicitation agreements, for the express purpose of depressing and/or reducing

market-based wages and benefit increases for Class Members that are typically

associated with the active recruitment of employees and workers in a competitive

industry.   While protecting and enhancing their profits, Defendants, through their

no-hire and non-solicitation agreements, robbed Class Members millions of

dollars-worth of wages for which Plaintiff and the Class now seek relief.

## II. JURISDICTION AND VENUE

3.     Plaintiff brings this class action lawsuit pursuant to Sections 4 and 16

of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover damages suffered by the

Class and the costs of suit, including reasonable attorneys' fees; to enjoin

Defendants' anticompetitive conduct; and for such other relief as is afforded under

the antitrust laws of the U.S. for Defendants' violations of Section 1 of the

Sherman Act, 15 U.S.C. § 1.

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§

1331, 1137, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a), 26.

5.     Venue is proper in this District pursuant to Sections 4, 12, and 16 of

the Clayton Act, 28 U.S.C. §§ 15, 22, and 26, and pursuant to 28 U.S.C. § 1391(b),

(c), and (d), because, at all times relevant to the Complaint, one or more of the

Defendants resided, transacted business, was found, or had agents in this District

and for the reasons alleged above.

## III. THE PARTIES

6.     Plaintiff, who at all relevant times was a resident of New York, is a

former employee of Defendant Brooklyn Hop 2 LLC. Plaintiff worked as a server

at the IHOP location at 783 Flushing Avenue, Brooklyn, New York 11206 from

approximately August 2011 through October 2014. As a result, Plaintiff was subject to and victimized by the non-solicitation and no-hire conspiracy between and among the Defendants, resulting in her having lost wages.

7.     Defendant Brooklyn Hop 2 LLC is a New York limited liability company. Defendant Brooklyn Hop 2 LLC does business in New York State as IHOP, with its principal place of business located at 276 Livingston Street, Brooklyn, New York 11217.  Upon information and belief, Defendant Brooklyn Hop 2 LLC operates approximately three stores in New York doing business as IHOP. Upon information and belief, Defendant Brooklyn Hop 2 LLC entered into a franchise agreement with Defendants DineEquity, Inc. and/or International House of Pancakes, LLC that contained no-hire and non-solicitation provisions.

8.     Defendant DineEquity, Inc. is a Delaware corporation in California with its principal place of business located at 450 North Brand Boulevard, Glendale, California 91203. Upon information and belief Defendant DineEquity, Inc. is the parent company of International House of Pancakes, LLC, IHOP Franchisor LLC, and IHOP Restaurants LLC.

9.     Defendant International House of Pancakes, LLC is a Delaware corporation. Upon information and belief, Defendant International House of Pancakes, LLC is a subsidiary of DineEquity, Inc. and its principal place of business is located at 450 North Brand Boulevard, Glendale, California 91203.

Upon information and belief Defendant International House of Pancakes, LLC franchises and operates IHOP restaurants.

10.     Defendant IHOP Franchisor LLC is a Delaware corporation. Upon information and belief, Defendant IHOP Franchisor LLC is a subsidiary of DineEquity, Inc. and its principal place of business is located at 450 North Brand Boulevard, Glendale, California 91203. Upon information and belief Defendant IHOP Franchisor LLC franchises and operates IHOP restaurants.

11.     Defendant IHOP Restaurants LLC is a Delaware corporation. Upon information and belief, Defendant IHOP Restaurants LLC is a subsidiary of DineEquity, Inc. and its principal place of business is located at 450 North Brand Boulevard, Glendale, California 91203. Upon information and belief Defendant IHOP Restaurants LLC franchises and operates IHOP restaurants

12.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 to 10, inclusive, are currently unknown to Plaintiff, who therefore sues Defendants by such fictitious names.  Does 1 through 10 are the other largest franchisees of IHOP in New York based on number of employees employed. Plaintiff is informed and believes, and based thereon alleges, that each of the Defendants designated herein as a Doe is legally responsible in some manner for the unlawful acts referred to herein in that they are additional co-conspirators.  Plaintiff will seek leave of court to amend this

Complaint to reflect the true names and capacities of the Defendants designated hereinafter as Does when such identities become known. Defendants and the Does 1-10 shall collectively be referred to as "Defendants."

13.     Plaintiff is informed and believes, and based thereon alleges, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants.  Furthermore, Defendants in all respects acted pursuant to the mutual non-solicitation and no-hire agreements that were intended to suppress and had the effect of suppressing wages and salaries for the Class Members.

## IV. FACTS EVIDENCING THE CONSPIRACY

14.     Defendants had a longstanding agreement to control their employees' wages and mobility by agreeing not employ or solicit each other's employees.

15.     The mutual non-poaching and non-solicitation agreement itself constituted a *per se* violation of the Sherman Antitrust Act and the Donnelly Act between Defendants for decades until it was recently brought to light by the Washington Attorney General's investigation commencing on or around January 2018 in the course of the AG's investigation into similarly illegal mutual non-

solicitation and anti-poach agreements entered into between several of the largest restaurant franchisors operating nationwide.[1]

16.    Upon information and belief, Brooklyn Hop 2 LLC and other franchisees, that own a total of approximately three IHOP stores in New York state, entered into franchisee agreements with no-hire and non-solicitation terms.

17.    As set forth herein, upon information and belief, all of the Defendants entered into the mutual non-solicitation agreements with the no-hire and non-solicitation terms above, with the common interest and intention to keep their employees' wage costs down, so that profits continued to rise or at least not be undercut by rising salaries across the industry.  As a result, Defendants engaged in anti-competitive behavior in advancement of a common and illegal goal of profiting at the expense of competitive market-based salaries.

18.    Defendants agreements unreasonably restrained trade in violation of the Sherman Act 15 U.S.C. § 1, *et seq*. and constituted unfair competition and unfair practices in violation of the Donnelly Act, , N.Y. Gen. Bus. Law § 340. Plaintiff, on behalf of herself and on behalf of the Class defined herein, seeks to recover the difference between the wages and salaries that Class Members were paid and what Class Members would have been paid in a competitive market, in

---

[1] See attached Washington Attorney General IHOP Franchisor Assurance of Discontinuance as **Exhibit A**.

the absence of Defendants' unlawful agreements, treble damages, attorneys fees, and interest, allowed under the law.

## V. <u>HARM TO COMPETITION AND ANTITRUST INJURY</u>

19.     Defendants are in the business of franchising or operating restaurants. In order to operate, Defendant Brooklyn Hop 2 LLC owned restaurants in New York and hired employees in their stores to oversee all restaurant activities.

20.     No-hire and non-solicitation agreements create downward pressure on restaurant worker wages. No-hire and non-solicitation agreements restrict worker mobility, which prevents low-wage workers from seeking and obtaining higher pay. This artificially suppresses restaurant worker wages. In fact, restaurant worker wages have remained stagnant.

21.     Unrestricted competition and the Free Market are the foundations of the American economic system. That is because "[f]ree and open markets are the foundation of a vibrant economy. Just as competition among sellers in an open marketplace gives consumers the benefits of lower prices, higher quality products and services, more choices, and greater innovation, competition among employer helps actual and potential employees through higher wages, better benefits, or other terms of employment." *DOJ/FTC Antitrust Guidance for HR Professionals*, Oct. 2016, at p. 2.

22.     Upon information and belief, Defendants conspired not to actively solicit or hire each other's employees as part of one overarching conspiracy to suppress the compensation of their employees, including Plaintiff and Class Members.  The desired effect was obtained.  Defendants' conspiracy suppressed Plaintiff's and the Class's compensation and restricted competition in the labor markets in which Plaintiff and the other members of the Class sold their services. It did so through an overarching agreement concerning mutual non-solicitation and no-hiring.

23.     Concerning the non-solicitation agreements, active solicitations have a significant beneficial impact for individual employees' compensation.  As understood by Defendants, active recruitment by rival employers, here other franchisees doing business as IHOP, often include enticing offers that exceed an employee's wages, salary, and/or benefits, thereby incentivizing the employee to leave his or her current employment in order to receive greater compensation for his or her labor, or alternatively, allowing the employee to negotiate increased compensation from his or her current employer.  Employees receiving active solicitation offers often inform other employees of the offer(s) they received, spreading information about higher wage and salary levels that can similarly lead to movement for the purposes of higher salary and wages and/or negotiation by

those other employees with their current employer or others for greater compensation.

24.     Active solicitation similarly affects compensation practices by employers. A franchisee that actively solicits other franchisees' employees or other workers will learn whether their offered compensation is enough to attract their competitors' employees, and may increase the offers to make their own company and its salaries more competitive in the marketplace.  Similarly, companies losing or at risk of losing employees to competitors engaged in active recruitment of employees or workers associated with their competitors may preemptively increase their employees' compensation in order to reduce their competitors' appeal.

25.     Defendants' efforts to maintain internal equity coupled with their non-solicitation agreements ensured that their conspiracy caused the compensation of all their employees to be suppressed.

## VI.     **INTERSTATE COMMERCE**

26.     During the Class Period, Defendants employed Plaintiff and other Class Members in New York and numerous other states.

27.     States compete to attract low wage workers, including restaurant workers, leading employment in the industry to cross state lines.

28.     Both Defendants and Plaintiff and other Class Members view labor competition in the industry to be nationwide. Defendants considered each other's

wages to be competitively relevant regardless of location, and many Class

Members moved between states to pursue opportunities at Defendants' stores.

29.    Defendants' conduct substantially affected interstate commerce

throughout the United States and caused antitrust injury throughout the United

States.

## VII.    CLASS ACTION ALLEGATIONS

30.    Plaintiff brings this case as a class action pursuant to Federal Rule of

Civil Procedure 23(b)(3) on behalf of a Class consisting of:

> All persons who were employed as a restaurant worker, or any similar
> position, by Brooklyn Hop 2 LLC, DineEquity, Inc., International House of
> Pancakes, LLC, IHOP Franchisor LLC, IHOP Restaurants LLC or any of the
> ten largest franchises of IHOP in New York State at any time from January
> 1, 2014 through August 20, 2018 (the "Class Period").[2]

31.    Plaintiff believes there are at least 500 current and former employees

in the Class. Given Defendants' systemic failure to comply with United States and

New York laws outlined in this case, the members of the Class are so numerous

that joinder of all members is impractical.   The Class is ascertainable from either

Defendants' employment or hiring records.

32.    Plaintiff's claims are typical of the claims of the members of the

Class, because all Class Members are or were employees who sustained damages

arising out of  Defendants' illegal mutual no-hire and anti-solicitation

---

[2] Plaintiff reserves the right to modify the class definition at a later date to conform to new facts learned, including
the properly named entity Defendant(s).

arrangements in violation of Section 1 of the Sherman Antitrust Act and Section

340 of New York General Business Law that resulted in wage suppression for all

of the Class Members.

33.     Plaintiff will fairly and adequately represent the interests of the Class.

Plaintiff has no conflict of interest with any member of the Class. Plaintiff has

retained counsel competent and experienced in complex class action litigation with

the resources and expertise necessary to litigate this case through to conclusion.

34.     Common questions of law and fact exist as to all members of the

Class, and predominate over any questions solely affecting individual members of

the Class. Among the questions of law and fact common to Plaintiff and Class

Members are:

> a.     whether Defendants agreed not to actively recruit each other's
>        employees in positions held by the Class Members;
>
> b.     whether Defendants agreed not to hire anyone who had worked
>        at am IHOP franchise for the previous six months;
>
> c.     whether the mutual non-solicitation and anti-poaching
>        agreements between Defendants were *per se* violations of the
>        Sherman Act, 15 U.S.C. § 1, *et seq.*;
>
> d.     whether the mutual non-solicitation and anti-poaching
>        agreements between Defendants were violations of the Sherman

Act, 15 U.S.C. § 1, *et seq.* under a "quick look" analysis of the rule of reason;

e.     whether Defendants violated the Sherman Act by agreeing to not actively recruit or solicit one another's workers in positions held by Class Members;

f.     whether Defendants violated the Sherman Act by agreeing to not hire anyone who had worked at an IHOP franchise for the previous six months;

g.     whether Defendants violated N.Y. Gen. Bus. Law § 340, by entering into agreements to not actively recruit each other's workers in positions held by Class Members;

h.     whether Defendants violated N.Y. Gen. Bus. Law § 340, by entering into agreements not to hire anyone who had worked at an IHOP franchise for the previous six months;

i.     whether and the extent to which Defendants' conduct suppressed wages and salaries below competitive levels;

j.     whether Plaintiff and the other Class Members suffered injury as a result of Defendants' agreements;

k.     whether any such injury constitutes antitrust injury;

l.     whether Class Members are entitled to treble damages; and

m.    the measure of damages suffered by Plaintiff and the Class.

35.    Class action treatment is superior to any alternative to ensure the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of effort and expense that numerous individuals would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Class Members are readily identifiable from Defendants' employee rosters, payroll records or other company records.

36.    Defendants' actions are generally applicable to the entire Class. Prosecution of separate actions by individual members of the Class creates the risk of inconsistent or varying adjudications of the issues presented herein, which, in turn, would establish incompatible standards of conduct for Defendants.

37.    Because joinder of all members is impractical, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Furthermore, the amounts at stake for many members of the Class, while substantial, may not be sufficient to enable them to maintain separate suits against Defendants.

## VIII. <u>STATUTE OF LIMITATIONS AND DEFENDANTS' CONTINUING VIOLATION</u>

38.     Defendants' conspiracy was a continuing violation in which Defendants repeatedly invaded Plaintiff's and Class Members' interests by adhering to, enforcing, and reaffirming the anticompetitive agreements described herein.

39.     Before 2018, Plaintiff and the members of the Class had neither actual nor constructive knowledge of the pertinent facts constituting their claims for relief asserted herein. Plaintiff and members of the Class did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of any conspiracy until at the earliest some time in 2018 when the investigation by the Washington AG into non-solicitation agreements among restaurant franchisees/franchisors including IHOP was first revealed publicly. This case is filed within four years of the moment when it was first revealed that the Washington AG investigation had unearthed that IHOP had engaged in mutual non-solicitation and no-hire agreements with Brooklyn Hop 2 LLC and other IHOP franchisees.

40.     Defendants engaged in a conspiracy that did not give rise to facts that would put Plaintiff or the Class on inquiry notice that there was a conspiracy

among IHOP and franchisees to restrict competition for Class Members' services through non-solicitation and no-hire agreements.

## IX.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### VIOLATION OF SECTION ONE OF SHERMAN ACT
### [15 U.S.C. § 1, *et seq.*]

### (On Behalf of Plaintiff and the Class)

41.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

42.    Defendants, by and through their officers, directors, employees, agents or other representatives, have entered into an unlawful agreement, combination and conspiracy in restraint of trade, in violation of 15 U.S.C. § 1, *et seq*. Specifically, Defendants agreed to restrict competition for Class Members' services through non-solicitation agreements and no-hire agreements, all with the purpose and effect of suppressing Class Members' compensation and restraining competition in the market for Class Members' services.

43.    According to the Department of Justice ("DOJ") and Federal Trade Commission ("FTC"), "…no-poaching agreements, among employers…are *per se* illegal under the antitrust laws." *DOJ/FTC Antitrust Guidance for HR Professionals*, Oct. 2016, at p. 3. "It is unlawful for competitors to expressly or

implicitly agree not to compete with one another, even if they are motivated by a desire to reduce costs." *Id.* at p. 2.

44.    Defendants' conduct injured Class Members by lowering their compensation and depriving them of free and fair competition in the market for their services.

45.    Defendants' agreements are per se violations of the Sherman Act.

46.    In the alternative, Defendants are liable under a "quick look" analysis where an observer with even a rudimentary understanding of economics could conclude that the arrangements in questions would have an anticompetitive effect on employees and labor markets.

47.    Plaintiff seeks the relief set forth below, including underpaid and treble damages.

## SECOND CAUSE OF ACTION
### ILLEGAL CONTRACT IN RESTRAINT OF TRADE OR FURNISHING OF SERVICES

### [New York General Business Law §§ 340, *et seq.,* (the "Donnelly Act")]

48.    Plaintiff incorporates by reference the allegations in the above paragraphs as if fully set forth herein.

49.    New York General Business Law § 340(1) states: "[e]very contract, agreement, arrangement or combination whereby a monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby competition or the free exercise of

any activity in the conduct of any business, trade or commerce or in the furnishing

of any service in this state is or may be restrained or whereby for the purpose of

establishing or maintaining any such monopoly or unlawfully interfering with the

free exercise of any activity in the conduct of any business, trade or commerce or

in the furnishing of any service in this state any business, trade or commerce or the

furnishing of any service is or may be restrained, is hereby declared to be against

public policy, illegal and void."

50.    As stated above, the Washington Attorney General conducted an

investigation of IHOP.  Based on its investigation, in its August 20, 2018

Assurance of Discontinuance the Washington Attorney General asserted that the

no-hire and non-solicitation provisions of IHOP's franchise agreements, by and

between itself and its franchisees, constitutes a contract, combination, or

conspiracy in restraint of trade.

51.    Through their conspiracy and actions as alleged herein, Defendants'

efforts to restrain competition for and suppress compensation of their employees

through their franchise agreements constitute per se illegal agreements in violation

of the Donnelly Act. Specifically, Defendants agreed to restrict competition for

Class Members' services through non-solicitation and no-hire agreements, all with

the purpose and effect of suppressing Class Members' compensation and

restraining competition in the market for Class Members' services. Defendants' illegal conspiracy was substantially injurious to Plaintiff and the Class Members.

52.    Defendants' conduct injured Plaintiff and other Class Members by lowering their compensation and depriving them of free and fair competition in the market for their services, allowing Defendants to unlawfully retain money that otherwise would have been paid to Plaintiff and other Class Members.

53.    The harm to Plaintiff and members of the Class in being denied payment for their services in the amount of higher wages and salaries that they would have received in the absence of the conspiracy outweighs the utility, if any, of Defendants' illegal non-solicitation and non-poaching agreements and, therefore, Defendants' actions described herein constitute an illegal restraint on trade within the meaning of N.Y. Gen. Bus. Law § 340.

54.    Pursuant to N.Y. Gen. Bus. Law § 340(5), any person who is injured by a violation of N.Y. Gen. Bus. Law § 340 may bring a civil action to recover three-fold the actual damages, and attorneys' fees and costs.

55.    Defendants' agreements are per se violations of the Donnelly Act.

56.    In the alternative, Defendants are liable under a "quick look" analysis where an observer with even a rudimentary understanding of economics could conclude that the arrangements in questions would have an anticompetitive effect on employees and labor markets in the state of New York.

57.     Plaintiff seeks the relief set forth below.

## X.     JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

## XI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and a class of all others similarly situated, requests that the Court enter an order or judgment against Defendants including the following:

a.   Certification of the class described herein pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b.   Appointment of Plaintiff as Class Representative and her counsel of record as Class Counsel;

c.   Compensatory damages in an amount to be proven at trial and trebled thereafter;

d.   Pre-judgment and post-judgment interest as provided for by law or allowed in equity;

e.    The costs of bringing this suit, including reasonable attorneys' fees and costs;

f.   An incentive award to compensate Plaintiff for her efforts in pursuit of this litigation;

g.   Interest under New York law; and

h.   All other relief to which Plaintiff and the Class may be entitled at law or in equity.

Dated October 5, 2018.

Respectfully submitted,
Mermelstein Law
Ackermann & Tilajef, P.C.

Avi Mermelstein (pro hac vice application
submitted herewith)
MERMELSTEIN LAW
3625 Johnson Avenue, Suite 202
Bronx, New York 10463
Telephone: (646) 470-2105
avi@mermelaw.com

Craig J. Ackermann (pro hac vice
application forthcoming)
ACKERMANN & TILAJEF, P.C.
1180 S. Beverly Drive, Suite 610
Los Angeles, California 90035
Telephone:   (310) 277-0614
Facsimile:    (310) 277-0635
cja@ackermanntilajef.com